UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD GIOVANNI (#96746) | CIVIL ACTION |
| VERSUS | |
| N. BURL CAIN, ET AL. | NO. 13-0566-BAJ-RLB |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on February 11, 2015.

                                                      RICHARD L. BOURGEOIS, JR.
                                                      UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**EDWARD GIOVANNI (#96746)**                     **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                         **NO. 13-0566-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment (R. Docs. 29 and 31).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Ass't Warden Kenneth Norris, Ass't Warden Stephanie Lamartiniere and Medical Director Jason Collins, M.D., complaining that the defendants have violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs and by subjecting him to unconstitutional conditions of confinement.

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a Declaration submitted "under penalty of perjury," a copy of his pertinent administrative remedy proceedings, Department Regulation No. B-06-0001 (relative to "Classification, Sentencing and Service Functions ... Health Care"), a copy of the Health Care Manual of the Louisiana Department of Public Safety and Corrections, including Health Care Policies Nos. HC-01 (relative to "Access to Care and Clinical Services"), HC-03 (relative to "Continuity of Care"), HC-05 (relative to "Infirmary Care"), HC-11 (relative to "Chronic Care/Special Needs"), HC-016 (relative to "Elective Procedures, Prostheses and Orthodontic

Devices"), and HC-34 (relative to "Offender Hygiene"), copies of Civil Service Position Description forms for defendants Burl Cain, Kenneth Norris and Jason Collins, copies of the LSP Correctional Officer Training Program, copies of Training Transcripts for defendants Burl Cain, Stephanie Lamartiniere, Kenneth Norris and Jason Collins, and excerpts from his medical records.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, excerpts from the plaintiff's medical records, and the affidavits of Dr. Randy Lavespere and defendants Jason Collins, Kenneth Norris, Stephanie Lamartiniere and Burl Cain.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that he suffers with severe chronic illnesses, including chronic obstructive pulmonary disease, emphysema and inguinal hernia(s), and is confined to a wheelchair with oxygen. He complains that the medical dormitory to which he has been assigned at LSP has subjected him to unconstitutional conditions of confinement, including over-crowding due to double-bunking of inmates in his medical dormitory, inadequate ventilation and hygiene, excessive heat, and generalized deficiencies in the medical care provided to inmates, including the alleged improper charging of co-pay assessments for medical care. In addition, the plaintiff asserts that the hernia(s) with which he suffers have subjected him to great pain and discomfort and have aggravated his medical condition, but medical personnel at LSP have failed and/or refused to provide him with needed surgical repair of the hernia(s).

In response to the plaintiff's allegations, the defendants first contend that the plaintiff's claims asserted against the defendants in their official capacities should be dismissed. In this regard, the Court notes that the plaintiff has named defendants Burl Cain, Kenneth Norris and Stephanie Lamartiniere *solely* in their official capacities, and the defendants are correct that § 1983 does not provide a federal forum for a litigant seeking monetary damages against a state

official acting in an official capacity. Specifically, such officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim asserted against a state official in an official capacity for monetary damages is treated as a claim asserted against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, inasmuch as an official-capacity claim for monetary damages is not cognizable in this Court and inasmuch as the plaintiff has explicitly named defendants Burl Cain, Kenneth Norris and Stephanie Lamartiniere solely in their official capacities, his claim for monetary damages asserted against them is subject to dismissal.

Notwithstanding the foregoing, the plaintiff has also asserted a claim for monetary damages against defendant Jason Collins, and this defendant has been named solely in his individual capacity. Inasmuch as a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose personal liability for actions taken by the official under color of state law, is not treated as a suit against the state, *Hafer v. Melo, supra,* this individual-capacity claim for monetary damages asserted against defendant Collins remains viable. In addition, the plaintiff's claim for prospective injunctive relief against all of the defendants is allowed to proceed because such a claim, even if asserted against a state official in an official capacity, is not prohibited under the Eleventh Amendment because such a claim is also not seen to be a claim against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 *Am. Jur. 2d Civil Rights* § 101. Thus, there is no jurisdictional bar to the plaintiff's claim for equitable relief asserted against the defendants.

Turning to a substantive review of the plaintiff's claims, the Court will next address the

defendants' contention that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to their participation in any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson*

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion, with one exception, should be granted. Specifically, the Court finds that the plaintiff has failed to make an evidentiary showing sufficient to show the existence of a disputed issue of material fact relative to most of his claims, but summary judgment is not appropriate in connection with his claim of deliberate medical indifference relative to the alleged failure to provide needed surgical repair of his hernia(s).

The Court will first address the plaintiff's claim regarding the conditions to which he has been subjected while confined at LSP. In this regard, he asserts that during the relevant time period, he has been confined at the Ash-2 Handicapped dormitory at LSP, the LSP Treatment Center, and the Cypress-2 Handicapped dormitory at LSP. He asserts that the conditions in the referenced dormitories are deficient and have subjected him to an unreasonable risk of harm to his health or well-being. Specifically, he asserts that the dormitories are over-crowded and provide limited space to the handicapped inmates, particularly considering that such inmates often have wheelchairs, breathing machines and/or oxygen tanks that complicate the use of available space. According to the plaintiff, this overcrowding has increased the risk of transmitting infectious diseases, particularly among aged or infirm inmates who suffer with weaker immune systems. In addition, the plaintiff complains that the dormitories and Treatment Center are not cleaned properly, nor are the vents and ducts of the ventilation system, causing the housing units to be "unclean, full of dust, and unsanitary." Further, the ventilation and heating systems are allegedly inadequate, resulting in excessive moist heat in the summer and excessive dry heat in the winter, and although the dormitories are equipped with exhaust fans and

---

leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

ventilation ducts, these fans and ducts fail to move sufficient air except when the windows are open, which does not occur in wintertime. According to the plaintiff, these conditions have resulted in him experiencing increased dizziness, headaches, difficulty breathing and sinus problems, and he asserts that these conditions are unconstitutional as a matter of law.

The plaintiff's claim relative to the conditions in his housing units may be seen to arise under the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, which provision prohibits the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The prohibition against cruel and unusual punishment mandates only that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate claimant faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Id.* Specifically, the prison official must be found to have personally been aware of

facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference. *Id.* at 837. While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); *Wilson v. Seiter, supra*, 501 U.S. at 303. Conclusory allegations, however, are not sufficient, and a plaintiff must allege facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

Applying the foregoing standard, the Court finds that the plaintiff has failed to make a sufficient showing relative to alleged unconstitutional conditions within his housing unit(s) at LSP. First, the law is clear that generalized conclusory assertions regarding over-crowding are not sufficient to support a claim of constitutional dimension. *See Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1, 2008) (noting that a claim of mere over-crowding, without more, does not state a violation of an inmate's constitutional rights); *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (reiterating that "[o]ver-crowding of persons in custody is not *per se* unconstitutional").[2] Further, the plaintiff's claims regarding unsanitary conditions, inadequate

---

2. To the extent that the plaintiff complains that the limited amount of available space results in a violation of state standards or regulations, this contention is not one of constitutional dimension. A mere violation of state statutes or regulations is not actionable under section 1983. *Jackson v. Cain*, 864 F.2d 1235, 1353 (5th Cir. 1989).

ventilation and excessive heat are also conclusory and do not support a finding of liability in connection with this claim. The plaintiff admits that there is a ventilation system provided in his dormitory, with exhaust fans, heating units and ventilation ducts to facilitate the movement of air. In addition, the plaintiff's assignment to a dormitory, and not a cell, suggests that he enjoys some degree of freedom of movement within his housing unit. And finally, the plaintiff's claim regarding medical complications that he has purportedly experienced because of the alleged conditions is entirely conclusory and has not been supported by any factual specificity or corroborative detail. Accordingly, the Court finds that the plaintiff has failed to show the existence of any disputed issue of material fact relative to this claim, and summary judgment is appropriate in favor of the defendants as a matter of law.[3]

The plaintiff also complains regarding the policy at LSP that results in his being charged co-payments when he seeks medical treatment at the facility. The plaintiff complains that this policy is unfairly applied to him and, in any event, that the policy has not been properly promulgated in accordance with the Louisiana Administrative Procedure Act, La. R.S. 49:950, *et seq*. A claim regarding the alleged failure to promulgate a prison rule or regulation fails to amount to a federal due process violation. In order to state a claim under 42 U.S.C. § 1983, the plaintiff must allege a violation of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The obligation of state officials to promulgate rules and regulations in accordance with the Louisiana Administrative Procedure Act, however, is a procedural requirement solely of state law. *See*

---

3. The plaintiff also complains regarding his placement in a medical dormitory at LSP instead of the LSP Treatment Center. However, the plaintiff has no constitutional right to any particular classification or housing assignment while confined in prison, and he has failed to show that his housing assignment has resulted in a constitutional deprivation.

*Marshall v. Lynn*, 3 F.3d 440 (5th Cir. 1993); *Martin v. Blackburn*, 581 F.2d 94 (5th Cir. 1978) (concluding that a "claim that state officials have failed to follow the procedural provisions of state law, without more, does not aver a cause of action under § 1983"). Specifically, there is no federal authority holding that such promulgation is a requirement of federal due process, and even the Act itself does not purport to limit the substantive content of any state regulation or rule. It merely prescribes the manner by which agencies with rule-making authority are directed to go about the rule-making process under state law. Without a state-created substantive limitation on the rule-making authority, the Act cannot be seen to create a protected liberty interest. *Marshall v. Lynn, supra*, 3 F.3d at *1 (noting that "[t]he Louisiana Administrative Procedures Act does not create a liberty interest in the promulgation of prison rules in accordance with state law"). This claim, therefore, must fail as a matter of law.

The plaintiff also includes an assertion in his Complaint that the defendants' actions constitute a violation of the ADA. In this regard, "[t]he ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It has been found that "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998). In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning

of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Applying the foregoing standard, it is abundantly clear that the plaintiff has not stated a claim relative to any violation of the ADA. Even assuming that the plaintiff has shown that he is a qualified individual with a disability subject to the provisions of the ADA, the plaintiff's allegations regarding his medical care and the generalized conditions to which he and other inmates have been subjected in the LSP housing units do not suggest that he has been denied any services, programs or activities or that such denial has been *by reason of* such disability. Specifically, the courts have concluded that, when a "plaintiff's core complaint [is] incompetent treatment for his underlying medical condition, [s]uch a complaint does not state a claim for relief under the ADA because '[t]he ADA does not create a remedy for medical malpractice.'" *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), *quoting Moore v. Prison Health Services, Inc.*, 24 F.Supp.2d 1164, 1168 (D. Kan. 1998), *affirmed*, 201 F.3d 448 (10th Cir. 1999). *See also Nottingham v. Richardson,* 499 Fed. Appx. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners'"). Thus, the plaintiff's allegations in no way implicate the protections afforded by the ADA, and this aspect of the plaintiff's case is subject to dismissal.

Finally, the plaintiff complains generally regarding the medical care that he has received at LSP and specifically regarding the medical care that he has received for his hernia(s), and he asserts that the defendants have violated his constitutional rights through deliberate indifference

to his serious medical needs. Specifically relative to his hernia(s), he asserts that the defendants have failed and/or refused to provide appropriate surgical intervention to address this painful and dangerous medical condition.

An inmate who seeks to assert a claim regarding inadequate medical care under § 1983 must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court first finds that the plaintiff's claim regarding

generalized deficiencies in the medical care provided at LSP is conclusory and does not support a potential finding of liability relative to the defendants. However, with regard to the plaintiff's claim regarding deficient care for his hernia(s), whereas the issue is a close one in this case, the Court concludes that summary judgment is not appropriate in connection with this aspect of the plaintiff's claim. Specifically, whereas there is evidence in the record that the plaintiff's medical condition in general and his COPD in specific have warranted a conclusion, at different times, that he is not a good candidate for hernia surgery, this is not the end of the inquiry. If it were, the Court would likely find that the defendants have not ignored the plaintiff's medical needs and have exercised their medical judgment and concluded that the plaintiff cannot undergo a surgical repair. Notwithstanding, there is also evidence in the record that for a number of years prior to 2011, the plaintiff has suffered with hernia(s), and his complaints have warranted several evaluations at LSP and Earl K. Long Hospital for surgical repair. There are numerous references to possible surgical repair of these hernias in 2011, and as early as November, 2011, the plaintiff was determined to "need[] hernia repair," and tests were ordered to clear him for surgery. *See* R. Doc. 29-3 at p. 41. These tests were undertaken and, in January, 2012, the plaintiff was "cleared for surgery" by an LSP physician based upon the plaintiff's then condition. *See id.* at pp. 44 and 49. Notwithstanding, the surgery was not thereafter undertaken, and the record is not clear as to the reason for this failure. Whereas the plaintiff's general medical condition may have since deteriorated, such that surgery is no longer a tenable option, this does not explain the failure to provide the "need[ed]" surgery when the plaintiff was cleared for that procedure. In addition, this case is complicated by the fact that the defendants have admitted, for purposes of this case,[4]

---

[4]. Pursuant to Order dated May 19, 2014 (R. Doc. 26), the Court noted that, because the defendants did not submit timely responses to the plaintiff's Requests for Admission, the matters addressed therein were deemed established for purposes of this case in accordance with Fed. R.

that there exists an "unconstitutional policy" at LSP "of denying medical care and surgeries due to cost/lack of funds in spite of the fact that these practices cause offenders bodily injury and death." This purported "unconstitutional policy" has also been addressed in several recent cases before this Court involving inmates at LSP who have allegedly been denied surgical intervention for diagnosed hernias.[5] In addition, the affidavits of defendants Kenneth Norris and Stephanie Lamartiniere indicate that prison officials have admittedly relied upon the over-stressed charity hospital system for hernia surgeries, which system is admittedly only performing a limited number of such surgeries, and then only when the need for surgery has become an emergency. *See* R. Docs. 29-5 and 29-6. The Court is unwilling to disregard the impact that these policies may have had upon delays and deficiencies in the plaintiff's care and treatment. Inasmuch as "inadequate resources can never be an adequate justification for depriving any person of his constitutional rights," *see Smith v. Sullivan*, 553 F.2d 373, 378 (5th Cir. 1977), the Court finds that summary judgment is inappropriate in connection with this claim.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the

---

Civ. P. 36(a) and (b).

5. *See, e.g., Hymel Varnado v. James LeBlanc, et al.*, Civil Action No. 13-0348-JWD-SCR; *Kenneth Lesley v. N. Burl Cain, et al.*, Civil Action No. 13-0490-JJB-SCR; *Wayne Fritz v. N. Burl Cain, et al.*, Civil Action No. 13-0556-JWD-SCR; and *Donald Thomas v. N. Burl Cain, et al.,* Civil Action No. 13-0673-JWD-SCR. In each of these cases, a Magistrate Judge's Report has been issued, recommending that the defendants' motions for summary judgment be denied.

instant case, having considered the allegations of the plaintiff's Complaint and having recommended that all but one of the plaintiff's federal claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims. It is further recommended that the plaintiff's Motion for Summary Judgment (R. Doc. 31) be denied and that the defendants' Motion for Summary Judgment (R. Doc. 29) be granted in part, dismissing all of the plaintiff's claims asserted against the defendants except his claim for compensatory damages asserted against defendant Jason Collins in the defendant's individual capacity and the plaintiff's claim for injunctive relief asserted against the defendants based upon alleged deliberate medical indifference in connection with the plaintiff's need for surgical repair of his diagnosed hernia(s). It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on February 11, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**